SAMUEL, Judge.
Plaintiff filed this suit on a policy of fire and windstorm insurance issued by the defendant to recover the sum of $785, together with statutory penalties and attorney’s fees. The petition alleges plaintiff is the owner of the premises located at 4921 Kendall Drive, New Orleans, a building insured under the policy; both the exterior and interior of that building had been damaged during the policy period on or about October 3, 1964 by Hurricane Hilda; plaintiff had had the damages repaired at a cost of $785; and the defendant arbitrarily and *121 capriciously had refused to pay the loss. Defendant answered denying liability and denying damage and repairs to the building. After trial there was judgment in favor of the defendant, dismissing plaintiff’s suit. Plaintiff has appealed.
In this court plaintiff contends: (1) the evidence taken establishes that the building in question, a small frame house with a built-up gravel roof, was damaged and repaired as alleged; alternatively, (2) even if the evidence offered by the defendant be accepted over that offered by plaintiff, the former was concerned only with the contended absence of exterior damage and repairs and, as plaintiff’s proof of interior damage and repairs was not controverted, he is entitled at least to a judgment for that part of his claim; and, also alternatively, (3) the trial court erred in refusing to grant a new trial.
The record contains various exhibits, including photographs of the roof, a copy of the insurance policy and a copy of an itemized, receipted offer by plaintiff’s contractor to do the repairs. It also contains the testimony of six witnesses, two for the plaintiff, the plaintiff himself and his contractor, and four for the defendant. Testifying on behalf of the defendant were: E. Donald Bunce, defendant’s claim superintendent; Jim Medby, a photographer; Denvrich D. Lebreton, an architect; and Malcolm O. Childs, an insurance adjuster.
The offer above mentioned includes items relative to repairing those parts of the roof and replacing those gutters which “had been blown off” from the front, right and left sides of the house, replacing lumber which “had been torn off”, replacing sheetrock in the entrance hall and left front bedroom, and painting in the living-dining-hall area and in two bedrooms to cover water stains. Each item contains an individual price and the total amounts to $785. The document is marked paid and signed by the contractor.
The contractor testified he was employed by plaintiff as a result of a newspaper advertisement. Working with two other men, whose addresses he did not know although one of them was his brother, he did the work included in the aforesaid offer, completing the job by October 28, 1964. The house had a built-up tar and gravel roof. It had been damaged severely on the front, right and left edges back to a distance of about 3 feet. Some of the rafters were broken or damaged about 3 or 3i/á feet from the end of the roof and the sheeting had been ripped off and broken in those places in which the roof had been lifted up. He repaired six or seven squares (each square being 10' x 1CK) of the roof, cutting back to where the roof was in good condition, replacing the wood sheeting, refelting, pouring on tar and regraveling. He used new tar paper and some of the old gravel found principally in the gutters together with some new gravel. He repaired a total of five to ten broken rafters, mostly on the left side. He also' did the painting and other interior work called for by his offer. After the work had been completed plaintiff paid for the same in the full amount of $785 in cash.
Plaintiff testified he had hired the contractor and paid him $785 in cash. He visited the premises on several occasions while the work was being done on the roof and in the interior of the building. The premises were not occupied at the time of the hurricane or while the repairs were being made; they were rented again on November 1, 1964, after the repairs had been completed, and occupied shortly thereafter by the new tenants. He filed written proof of loss with the proper insurance agent approximately two months after completion of the repairs and payment of the loss was refused.
Mr. Bunce, defendant’s claim superintendent, testified that as a result of reports received from insurance adjusters, all of whom had been brought into this area by the General Adjustment Bureau because of the hurricane, he had denied liability to the plaintiff for any damage resulting from any peril covered by the policy.
*122 Mr. Medby, a professional photographer, identified photographs he had taken of the roof after climbing thereon. Those photographs were taken on or about January 12, 1965 at defendant’s request.
Mr. Lebreton, a New Orleans architect with many years of experience who' was qualified and accepted by the court as an expert in the field of architecture, testified as follows: At the request of the General Adjustment Bureau he had closely inspected and checked the entire roof area of the premises on January 22, 1965 for the purpose of determining the condition of the roof and whether or not any recent repairs had been made thereto. The roof involved was a built-up, tar paper, tar-gravel type. The inspection was made on the roof surface itself. He found the roof was in an advanced stage of deterioration. Approximately 30% to 40% of the gravel surface had been washed or blown away during the years. The felt was drying out, cracking and pealing. He carefully inspected all sides of the roof surface near the edge as well as in the middle, brushing the gravel away in three or four places in every area heavily covered by gravel. He was of the opinion that if the roof had been repaired as testified by plaintiff’s contractor (this in response to hypothetical questions) such repairs would have been evident at the time of his inspection and he would have found some evidence thereof. The pitch or asphalt used in the repairs would not have dried out in the three month period from October to January, or even for an additional six months, and the condition of the new felt used in the repairs would have been quite different from the dried-out felt he saw; there would have been more smooth surface resulting from the application of pitch or asphalt in connection with repair; and if portions of the roof had been cut out and replaced some lapping would have resulted, the resurfacing would have caused variations in the surfaces in the areas where the repaired portions and the unrepaired portions met. The presence of some evidence of new roofing certainly would have been present if as much as six or seven squares of roof had been repaired. Yet he found no such evidence of any kind.
Mr. Childs testified he lived in Musco-gee, Oklahoma, was employed by General Adjustment Bureau as an insurance adjuster specializing in property claims, and had handled the claim upon which this suit is based. He inspected the premises on November 23, 1964, December 10, 1964 and again on January 8, 1965. He also accompanied the photographer when photographs were taken on January 12, 1965 (he identified the premises shown in the photographs introduced by defendant) and accompanied the architect when he made his inspection on January 22, 1965. He confined his inspections to the roof area although he did enter the building on one occasion and at that time observed some painting recently had been done in the interior. During his inspections he closely examined the entire roof looking for evidence of the damage and repairs plaintiff claimed had occurred and had been made thereto. He found the built-up tar and gravel roof was in a very deteriorated condition and was unable to find any evidence of any repairs at all with the possible exception of one small piece of plywood under the overhang which had been freshly painted with green paint and a small part of the gutter in the area of that one piece of plywood, which portion of gutter apparently had been replaced or cleaned out and painted. In addition to his inspections while on the surface of the roof he examined around the rafter ends under the eaves. There was a screen ventilated panel about five inches in width around the building under the overhang. Looking through this screen he could see the rafters and the roof sheeting and was unable to find any rafters or roof sheeting which had been replaced or repaired.
We must disagree with plaintiff’s first contention, that he is entitled to *123 a judgment as prayed on the basis of the evidence contained in the record. The questions presented are whether plaintiff sustained the damages as alleged and then repaired those damages and paid for the same. Involved are only questions of fact and, in view of the contradictory testimony, in order to arrive at a determination of those facts some of the witnesses must be believed and others disbelieved. Our firmly established rule is that on questions of fact involving the credibility of witnesses the trial court will be reversed only for manifest error. See 2A La.Dig., Appeal and Error, ^1008(1). We find no such manifest error here.
Nor can we agree with plaintiff’s second contention, that he is entitled to a judgment to the extent of the cost of repairs to the interior of the building because his proof of interior damage and repair was not controverted. The policy does not provide coverage for windstorm damage to the interior of the premises unless the building first sustains actual damage to its roof or walls by the direct force of wind or hail, in which case coverage is afforded for loss to the interior caused by rain, snow, etc. entering the building through openings through the roof or walls made by such direct action of wind or hail. As plaintiff’s claim is based entirely upon the alleged fact that the roof was damaged by the hurricane and the water damage to the interior was caused by rain entering the building through the thus damaged roof, the fact that the roof was not damaged precludes any recovery for interior loss.
Plaintiff’s third contention is without merit. The first day of trial was March 23, 1967. On that date plaintiff offered the testimony of his two witnesses and the defendant offered the testimony of all of its witnesses with the exception of Mr. Childs. However, defendant’s photographer did not recall the address of the premises he had photographed and for that reason the trial judge refused to permit introduction of the photographs in evidence. At defendant’s request the case was continued as an open case to permit further identification of the photographed premises by Mr. Childs who, defense counsel informed the court, had accompanied the photographer when the pictures were taken. After due notice to both counsel the matter was again heard on April 13, 1967. The only witness heard at that time was Mr. Childs, who not only identified the photographed premises but also gave the testimony concerning his inspections, which testimony we have summarized above. The third contention is based on the argument that plaintiff was precluded from offering rebuttal testimony to contradict the testimony of Mr. Childs relative to his various inspections of the premises.
The argument is without foundation in fact. The testimony by Mr. Childs of which plaintiff now complains was given without objection on the part of plaintiff. At the conclusion of that testimony the defendant offered the photographs in evidence and closed its case. The court then asked counsel for the plaintiff if he had anything to offer in rebuttal. He replied in the negative. The court then took the case under advisement and subsequently rendered judgment. Under these circumstances the refusal to grant a new trial was entirely proper.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.